UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUAN COLLADO and JENNY SANCHEZ, *individually and on behalf of others similarly situated*,

                        Plaintiffs,

-against-

ADOLFO MEAT MARKET CORP. and EUCEBIO ADOLFO MARTINEZ

                        Defendants.

Case No.1:22-cv-09366 (JMF)

## MEMORANDUM OF LAW
## IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Defendants Adolfo Meat Market Corp. (the "Meat Martket") and Eusebio Adolfo Martinez ("Martinez") (collectively, "Defendants") respectfully submit this memorandum of law in support of their motion to dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

### PRELIMINARY STATEMENT

It is easy to win the game when you rig the system. That's exactly what Juan Collado ("J. Collado") and Jenny Sanchez ("Sanchez") (collectively, "Plaintiffs") have done here. Both Plaintiffs were de facto managers and had nearly complete control over the hours they worked, the wages they were paid, the method in which they were paid those wages, and the mechanisms for reporting those wages. So, as fate would have it, when they quit their jobs, Plaintiffs joined forces to sue the Defendants for all the things that they did to themselves when they were employed.

To be clear Plaintiffs have commenced this action pursuant to the FLSA claiming that they were not properly paid overtime pursuant to the FLSA and NYLL, claiming that Defendants failed to pay them on time, did not provided payroll notices, and caused the Fraudulent filing of

information.

Missing from their heinous description of the facts are the allegations by the Plaintiffs indicating that they were owners and managers and therefore exempt from the overtime pay requirements of the FLSA and the NYLL. Also, missing is any complaint filed with the IRS to show that once these claims fail, they would otherwise be entitled to federal jurisdiction.

In sum, while it appears that Plaintiffs' complaint is as inaccurate as it is long, Defendants sole focus will be on showing this court that the Plaintiffs do not have any federal claims and therefore should be barred from proceeding in this jurisdiction.

## STATEMENT OF FACTS

**Plaintiff's statement of facts**

Plaintiff's complaint alleges that plaintiff Juan Collado (hereinafter "J. Collado") was employed by the Defendants as a butcher from in or around January 2012 to September 8, 2021. Comp ¶ 22.[1] According the plaintiffs, J Collado's duties were limited to, "*inter alia*, cleaning, cutting, weighing, and labeling meats, maintaining supplies, opening and closing the business, and assisting customers." Comp. ¶ 23.

J. Collado purports to have always worked at least six days per week, accumulating 78 hours per week from the beginning of employment to February 2020, and thereafter 74 hours per week from May 2020 to September 8, 2021. Comp. ¶¶ 24, 26. Mr. Collado admits that he did not work from March to May 2020 because the Meat Market was closed due to the Pandemic. Comp ¶25.

When he did work, J. Collado notes that Defendants did not track his hours nor did they

---

[1] References to "Comp. ¶___" refers to the paragraphs in Plaintiff's Complaint in this action (Document No. 1 on the Docket) filed on November 1, 2022.

require him to record his time. Comp. ¶28. For his efforts, J. Collado received a fixed weekly salary of $550 per week from January 2015 to December 2017, $650 per week from January 2018 to December 2019, and $750 per week from January 2020 until the end of his employment, excepting the period when the Meat Market was closed due to the pandemic. Comp. ¶¶ 29-31.

Jenny Sanchez (hereinafter "Sanchez") alleges that she was employed "as a cashier and assistant from on or around Mach 1, 2015 until on or around September 18, 2021." Comp. ¶ 32. Ms. Sanchez lists her job duties as including "*inter alia*, operating cash registers, providing customer service, reviewing, organizing, and ordering inventory, paying vendors, and applying for licensing permits required by the Department of Agriculture." Comp. ¶ 33.

Ms. Sanchez alleges that from March 2015 to in or around July 2015 she "regularly worked" five days per week for a total of approximately 62.5 hours per week. Comp. ¶34. Ms. Sanchez also notes that from July 2015 until March 2020, she "regularly worked" seven days per week for a total of 84.5 hours per week. Comp. ¶ 35. While she did not work during the months that the Meat Market was closed due to the pandemic, from May 2020 to July 2020, she worked approximately 41 hours per week, until finally settling into a 74 hour work week from August 2020 until she resigned. Comp. ¶ 38.

Ms. Sanchez alleges that she was not afforded proper meal breaks or rest breaks during her employment with Defendants. Comp. ¶ 39. She also notes that "Defendants neither tracked the actual hours [that she] worked nor required [her] to record her time." Comp. ¶ 40.

For her efforts, Ms. Sanchez earned a fixed salary of $525 per week from March 2015 to June 2017, $600 per week from July 2017 to March 2020, and $750 per week from April 2020 until September 2021. Comp. ¶¶41-43.

Both Plaintiffs claim that through their employment with Defendants they received part of

their salaries in cash and the other part in check, but that their IRS form W-2s for the period between 2015 and 2021 only reflected the amount of money that they received by check. Comp. ¶¶ 44-46. As a result, Plaintiff's blame Defendants for filing false information returns with the IRS. Comp. ¶ 48.

Given all of the above, Plaintiffs allege that Defendants failed to pay them proper ovetime wages in accordance with the Fair Labor Standards Act (FLSA) and the New York Labor Law (NYLL). Comp. ¶¶54-67. They also alleged that Defendants failed to provide proper wages notices or wage statements pursuant to the NYLL. Comp. ¶¶76-83. Defendants also allege that they were not timely paid (Comp. ¶¶76-79) and that Defendants provided them with fraudulent W-2 Forms (Comp. ¶¶84-91).

**Defendants Statement of Facts**

Plaintiff, J. Collado was an exempt employee. To be sure, in addition to being a manager he was the most exempt type of employee you can possibly be, he was an owner. Collado Aff. ¶ 5[2]; Martinez Aff. ¶ 5[3]. If there was any doubt as to his ownership, however, there can be no doubt with respect to him being a manager. Indeed, even in Plaintiffs' first demand letter sent the Defendants on December 17, 2021, Plaintiff's law firm states "As you know, Mr. Collado was employed by Adolfo Meat Market as a manager from in or around January 2012 until on or about September 8, 2021." Exhibit A.[4]

Though, Plaintiffs failed to submit a demand letter for Ms. Sanchez, it's clear from her

---

[2] References to "Collado at ¶__" refers to the Affidavit of Victor Collado, brother of Juan Collado, submitted in support of the instant motion to dismiss.

[3] References to "Martinez at ¶__" refers to the Affidavit of defendant Eucebio Adolfo Martinez, submitted in support of the instant motion to dismiss.

[4] References to Exhibits refer for the Exhibits attached to the Affidavit of defendant Eucebio Adolfo Martinez.

duties that she was at least a manager. In addition to the plethora of duties indicated in Plaintiffs' Complaint (Comp. ¶33), Ms. Sanchez "had full control of all of the business finances." Martienz Aff. ¶ 22. According to Mr. Martinez this meant that she "collected all of the money that came into the store, be it in cash or by credit card; she paid all of the vendors; she paid the salaries for all employees, including Juan's and her own; and she had sole control over the Meat Market's bank accounts" Id. In addition, Ms. Sanchez, dealt with the accountant with respect to all matters regarding booking, payroll, and tax filings. Martinez Aff. ¶ 23.

Mr. Martinez goes on to note that Jenny paid him or did not, as she saw fit and that he had so much trust in her that he never questioned her. Martinez Aff. ¶ 26. This was corroborated by Victor Collado, brother of J. Collado, who notes that she "was the most powerful person at the Meat Market because she was the only who dealt with the Money." Collado Aff. ¶ 11. Ms. Sanchez tracked everyone's hours and paid everyone's wages, including J. Collado's and her own. Martinez Aff. ¶ 23, 35. Collado Aff. ¶¶13, 15. The Meat Market's accountant makes it abundantly clear that Ms. Sanchez was the person that he spoke to whenever he needed any information regarding bank statements, payroll, sales and taxes. See Exhibit C

## ARGUMENT

### I. PLEADING STANDARD

To survive a motion to dismiss under Rule 12(b)(6) plaintiffs must plead enough facts to "to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although factual allegations are assumed to be true, they must still be sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The plausibility standard requires more than a showing of "sheer possibility that the defendant has acted unlawfully" and requires a plaintiff to make "more than an

unadorned, the-defendant-unlawfully-harmed-me accusation . . . devoid of 'further factual enhancement.'" *Id.* (alteration in original) (quoting *Twombly*, 550 U.S. at 557). To meet this standard, a plaintiff must plead sufficient factual content to allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Pleadings that contain "no more than conclusions…are not entitled to the assumption of truth" otherwise applicable to complaints in the context of motions to dismiss. *Id.* at 679.

## II. PLAINTIFFS FEDERAL OVERTIME AND THE NEW YORK STATE OVERTRIME CLAIMS MUST BE DISMISSED WHERE THEY WERE EXEMPT EMPLOYEES

29 U.S.C. § 207(1) establishes 40 hours as number of hours in a regular workweek and mandates that no employer shall require any employee to work in excess of those hours unless that employee is paid "at a rate not less than one and one-half times the regular rate at which he is employed." The New York Labor Law has a similar mandate. *See* NYLL § 190 *et seq.*

Both federal and state labor law exempt from overtime requirements employees who, *inter alia*, hold "bona fide executive" positions. 29 U.S.C. § 213(a)(1) ; NYLL § 651(5). Moreover, "federal courts evaluate New York's executive exemption by reference to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201et seq. , and its attendant regulations." *Clougher v. Home Depot U.S.A., Inc.*, 696 F. Supp. 2d 285, 289 n.5 (E.D.N.Y. 2010) (citing *Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 78 (2d Cir. 2003) ).

The phrase "employed in a bona fide professional capacity" is defined, in pertinent part, as any employee "[c]ompensated on a salary or fee basis at a rate of not less than $455 per week" and whose primary duty requires either the performance of work demanding (1) "knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of

specialized intellectual instruction" (the "Learned Professional"); or (2) "invention, imagination, originality or talent in a recognized field of artistic or creative endeavor." 29 C.F.R. § 541.300(a).[5]

For the relevant time period, the Department of Labor regulations defined an employee as "employed in a bona fide executive capacity" when all of the following had been met:

> (1) the employee is compensated on a "salary basis" of at least $455 per week;
>
> (2) the employee's "primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof";
>
> (3) the employee regularly directs the work of two or more other employees; and
>
> (4) the employee has the authority to hire or fire other employees or the employee's recommendations with respect to hiring, firing, or promotion are given "particular weight."

29 C.F.R. § 541.100(a).

### A. Plaintiff Juan Collado was an Exempt Employee

There is no doubt here that J. Collado, as owner and manger of the Meat Market was an exempt employee. The fact that was a manger cannot be denied by the Plaintiffs. See Exhibit __. Beyond that he meets all four elements of the statute, in that he made more than the federally required minimum of $455 during his employment at the Meat Market, and even made more than the current minimum salary of $684 per month. Comp. ¶¶29-31.

In addition, though Plaintiff's complaint tries to back track from the fact that he admitted to being a manager in his demand letter, even J. Collado's brother Victor notes that J. Collado "set his schedule, placed food orders, and supervised the other butchers that worked for the Meat Market." Collado Aff. ¶7. Defendant Martinez adds to that by pointing out that, J. Collado "had

---

[5] Currently the rate is $684 per week, but the $455 per week as applicable during Plaitniff's employment.

the keys to the Meat Market, he set his own work schedule, took paid vacations at will, set his pay, placed food orders, supervised employees the five or so employees we had to make sure that they were working correctly, hired and fired employees, and dealt with the customers to make sure that they were kept happy." Martinez Aff. ¶ 8.

Moreover, there is no doubt that as owner, it was expected that his primary duty was the supervision of the employees and all other aspects of the Meat Market for the benefit of the ownership.

Thus, because Plaintiff J. Collado was owner, manager and an exempt employee, all of his claims for overtime wages must fail.

### B. Plaintiff Jenny Sanchez was an Exempt Employee

While she was not an owner, Ms. Sanchez had an extraordinarily wide array duties at the Meat Market that were certainly executive in functionality. Even by her account she had broad and ample duties that ranged from "operating the register" to "reviewing, organizing, and ordering inventory" to "paying vendors" to even "applying for licensing permits." Comp. ¶33.

Beyond the duties she claimed, it was clear that she was the most powerful person at the Meat Market. Collado Aff. ¶ 11. Thus not only did Ms. Sanchez manage a department, she managed all of the employees and even the owners of the Meat Market.

In addition, she was compensated above the minimum federal wage for her entire period of employment. Comp. ¶¶ 41-43.

The only possible argument that could be made against her not being an exempt employee had to do with whether she had the authority to hire or fire employees. While there is no direct evidence of this, because as Mr. Martinez informed us, only one person was ever fired from the Meat Market, we do know two things: 1) she had the ability to protect her job, as was evidenced by the fact that when Mr. Martinez threatened to let her go, J. Collado also threatened to resign

and therefore she was kept; but more importantly 2) because the otherwise undue influence she had on the entire company. We know that Victor Collado (whose son she is Godmother to) (Martinez Aff ¶ 14) thought that she was the most powerful person in the Meat Market, Mr. Martinez himself refused to question her even when she did not pay him (Martinez Aff. ¶ 26) and setting aside the rummors that they are a couple, we saw how the third owner, J. Collado came to her defense when she was going to be fired (Martinez Aff ¶ 39). Thus, it's fair to say that if Ms. Sanchez wanted someone either hired or fired her opinion carried enough influence that it would have happened.

Thus, all things considered it is obvious that Ms. Sanchez was also an exempt employee, thus meriting that her FLSA and NYLL overtime claims be dismissed.

### III. PLAINTIFFS's CLAIM FOR FILING FRAUDULENT INFORMATON RETURNS MUST BE DISMISSED WHERE NO COPY OF A COMPLAINT TO THE IRS IS PROVIDED

Plaintiffs' sixth cause of action alleges the fraudulent filing of information returns pursuant to 26 U.S.C. § 7434(a) which permits any person to bring a civil action for damages "if any person willfully files a fraudulent information return with respect to payments purported to be made to [such] person." However, 26 U.S.C. § 7434(d) clearly states that "[a]ny person bringing an action under subsection (a) shall provide a copy of the complaint to the Internal Revenue Service upon the filing of such complaint with the court."

Since the Plaintiffs have not, in fact, filed a complaint with the IRS and since they have not provided it here, this claim must be dismissed. Moreover, the Court should clearly see this for what it is – a ruse in an attempt to maintain Federal Jurisdiction, where such jurisdiction does not exist.

IV. **TO THE EXTENT PLAINTIFFS ARE FOUND NOT TO HAVE ALLEGED ANY CLAIMS AGAINST DEFENDANTS UNDER NYLL, THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER THE STATE LAW CLAIMS**

As detailed above, Plaintiffs have failed to allege any Federal claims against Defendants. As a result this Court should dismiss these claims and decline to exercise supplemental jurisdiction over any remaining state law claims.

Subject matter jurisdiction in this matter is premised on federal question jurisdiction over Plaintiff's FLSA claims under 28 U.S.C. § 1331 and a claim under 26 U.S.C. § 7434, with supplemental jurisdiction over their state law claims pursuant to 28 U.S.C. § 1367. Comp. ¶ 3.

A district court "may decline to exercise supplemental jurisdiction over a claim…if…the district court has dismissed all claims over which it has original jurisdiction." 13 U.S.C. § 1367. The decision to exercise supplemental jurisdiction is within the sound discretion of the district court and involves an assessment, at each stage of the case, of the values of judicial economy, convenience, fairness, and comity. *See Lundy*, 711 F.3d at 117-18. "Once all federal claims have been dismissed, the balance of factors will usually point toward a declination." *Id.* at 118.

The Court should decline to exercise supplemental jurisdiction over Plaintiffs' state law claims because none of the factors listed above counsel in favor of retaining jurisdiction. The litigation is at its earliest stages and the Court and parties have not invested significant resources in litigating or resolving the state law claims. Nor do principles of comity counsel in favor of the Court retaining jurisdiction. Courts in these circumstances have routinely declined to exercise supplemental jurisdiction and dismissed state law claims. *Bustillos v. Academy Bus, LLC*, No. 13-cv-565, at *3 (S.D.N.Y. January 13, 2014) *See, e.g., Dreher v. Doherty*, No. 12-cv-3385, 2013 U.S. App. LEXIS 17464, at *1 n.1 (2d Cir. Aug. 21, 2013) (unpublished) (noting district court's dismissal); *Bilyou v. Dutchess Beer Distribs., Inc.*, 300 F.3d 217, 218 n.1 (2d Cir. 2002) (same);

*Cromwell*, No. 12-cv-4251, 2013 U.S. Dist. LEXIS 69414, at *11-13 (declining to exercise supplemental jurisdiction over NYLL claims after determining that FLSA claims were not adequately pleaded); *Yang Li v. Ya Yi Cheng*, No. 10-cv-4664, 2012 U.S. Dist. LEXIS 40241, at *16 (E.D.N.Y. Jan. 9, 2012) (noting that Second Circuit courts routinely decline supplemental jurisdiction in these circumstances).

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' FLSA and NYLL claims against all of the Defendants in their entirety, with prejudice, and grant any and all further relief as may be just and proper.

Dated: New York, New York
      February 10, 2023

 

_____
Martin E. Restituyo, Esq.
Law Offices of Martin E. Restituyo, P.C.
1325 Avenue of the Americas, 28th Floor
New York, New York 10019
Tel. 212-729-7900
restituyo@restituyolaw.com

*Counsel for All Defendants*