UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------------X
JUAN COLLADO and JENNY SANCHEZ, individually and on
behalf of all others similarly situated,

                                      Plaintiffs,

Civil Action No.
1:22-cv-09366

                       -against-

ADOLFO MEAT MARKET CORP. and EUCEBIO ADOLFO
MARTINEZ,

                                    Defendants.
--------------------------------------------------------------------------------X

## MEMORANDUM OF LAW IN OPPOSITION TO
## DEFENDANTS' MOTION TO DISMISS

Katherine Morales
Katz Melinger PLLC
370 Lexington Avenue, Suite 1512
New York, New York 10017
(212) 460-0047

## **Table of Contents**

Table of Authorities ................................................................................................. ii

PRELIMINARY STATEMENT ................................................................................ 1

LEGAL STANDARD ............................................................................................... 1

I.   PLAINTIFFS HAVE ADEQUATELY PLEADED THEIR CLAIMS ........................ 2

    A.  Plaintiffs Adequately Plead their Claims for Unpaid Overtime Wages Pursuant to the FLSA and NYLL ................................................................................................... 2

    B.  Plaintiffs Adequately Plead Their Remaining NYLL Claims ............................. 4

    C.  Plaintiffs Adequately Plead their Claims Under 26 U.S.C. § 7434 .................... 6

    D.  To the Extent the Court Deems Plaintiffs' Pleadings Deficient, Plaintiffs Seek Leave to Amend the Complaint ......................................................................................... 8

II.  DEFENDANTS ASSERT EXEMPTIONS NOT APPARENT FROM THE FACE OF THE COMPLAINT ............................................................................................... 8

    A. The Executive Exemption ................................................................................. 9

    B. The Business Owner Exemption ....................................................................... 13

    C. The Learned Professional Exemption ............................................................... 14

    D. The Creative Professional Exemption .............................................................. 16

III. THE COURT SHOULD DISREGARD DEFENDANTS' EXTRINSIC EVIDENCE .......... 17

    A. Extrinsic Evidence Cannot Be Considered on a Motion under FRCP 12(b)(6) ........ 17

    B. The Court Should Not Convert This Motion to One for Summary Judgment ............ 19

IV. THE COURT HAS SUPPLEMENTAL JURISDICTION OVER PLAINTIFFS' NYLL CLAIMS ................................................................................................................ 20

CONCLUSION ......................................................................................................... 22

## **Table of Authorities**

**Cases**

*Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328 (2d Cir. 2006)................................ 21

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................................................ 1

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ......................................................................... 1

*Briarpatch Ltd. v. Phoenix Pictures, Inc.*, 373 F.3d 296 (2d Cir. 2004) ..................................... 21

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002) ............................................. 18, 20

*Chance v. Armstrong*, 143 F.3d 698 (2d Cir. 1998) ....................................................................... 2

*Chen v. Major League Baseball Props., Inc.*, 798 F.3d 72 (2d Cir. 2015) ................................... 9

*Coker v. Goldberg & Assocs. P.C.*, 2022 WL 874719 (S.D.N.Y. Mar. 24, 2022) ........................ 9

*Czerw v. Lafayette Storage & Moving Corp.*, 2018 WL 5859525 (W.D.N.Y. Nov. 9, 2018) ....... 7

*Davis v. J.P. Morgan Chase & Co.,* 587 F.3d 529 (2d Cir. 2009)................................................. 9

*Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85 (2d Cir. 2013)..................................................... 2

*DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54 (S.D.N.Y. 2010) ......................................... 18

*Di Simone v. CN Plumbing, Inc.*, 2014 WL 1281728 (E.D.N.Y. Mar. 31, 2014) ......................... 4

*Farmer v. Dr. Lucia Patino, Optometrist, P.C.*, 2019 WL 110956 (E.D.N.Y. Jan. 4, 2019)..... 5, 6

*Faulkner v. Beer*, 463 F.3d 130 (2d Cir. 2006)............................................................................ 18

*Fonte v. Board of Managers of Continental Towers Condominium*, 848 F.2d 24 (2d Cir.1988). 20

*Forman v. Davis*, 371 U.S. 178 (1962)......................................................................................... 8

*Friedl v. City of N.Y.*, 210 F.3d 79 (2d Cir. 2000) ................................................................. 17, 18

*Gomez v. Dynaserv Indus., Inc.*, 2016 WL 6072371 (E.D.N.Y. Oct. 17, 2016).......................... 12

*Harris v. City of N.Y.,* 186 F.3d 243 (2d Cir. 1999) ...................................................................... 2

*Harris v. Mills*, 572 F.3d 66 (2d Cir. 2009)................................................................................... 1

*Helprin v. Harcourt, Inc.*, 277 F.Supp.2d 327 (S.D.N.Y. 2003) ................................................ 18

*Heredia v. Americare, Inc.*, 2020 WL 3961618 (S.D.N.Y. July 13, 2020) ................................. 19

*Hernandez v. 99 Thai Playground LLC*, 2022 WL 18539303 (S.D.N.Y. Nov. 28, 2022), *report and recommendation adopted*, 2023 WL 1400626 (S.D.N.Y. Jan. 31, 2023).................................. 3

*Johnson v. Levy*, 812 F. Supp. 2d 167 (E.D.N.Y. 2011)............................................................... 19

*Jones v. E. Brooklyn Sec. Servs. Corp.*, 2012 WL 3235784 (E.D.N.Y. Aug. 7, 2012) ............... 13

*Jung v. Gina Grp.*, LLC, 2020 WL 3640048 (S.D.N.Y. July 6, 2020).......................................... 4

*Katzman v. Essex Waterfront Owners LLC*, 660 F.3d 565 (2d Cir. 2011) .................................... 6

*Kopec v. Coughlin,* 922 F.2d 152 (2d Cir. 1991) ........................................................ 17

*Leon v. Port Wash. Union Free Sch. Dist.*, 49 F. Supp.3d 353 (E.D.N.Y. 2014) .......................... 4

*Leonard F. v. Israel Discount Bank of N.Y.,* 199 F.3d 99 (2d Cir.1999) ...................................... 17

*Liu v. New York Neuromodulation Med., P.L.L.C.*, 2021 WL 3406373 (S.D.N.Y. Aug. 4, 2021) 4

*Lopez-Serrano v. Rockmore*, 132 F. Supp. 3d 390 (E.D.N.Y. 2015) ............................................... 5

*Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106 (2d Cir. 2013) .............................. 2

*Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697 (2d Cir. 2000) ................................. 21

*Martinez v. Triumph Constr. Corp.*, 2022 WL 861847 (S.D.N.Y. Mar. 22, 2022) ...................... 4

*Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192 (2d Cir. 2013) ............. 2

*Nam v. Ichiba Inc.*, 2021 WL 878743 (E.D.N.Y. Mar. 9, 2021) ................................................... 2

*Ozawa v. Orsini Design Assocs., Inc.*, 2015 WL 1055902 (S.D.N.Y. Mar. 11, 2015) ................ 12

*Paschalidis v. Airline Rest. Corp.*, 2021 WL 5013734 (E.D.N.Y. Oct. 28, 2021) ................ 13, 14

*Reiseck v. Universal Commc'ns of Miami, Inc.*, 591 F.3d 101 (2d Cir.2010) ................................ 9

*Rosario v. Fresh Smoothies LLC*, 2021 WL 5847633 (S.D.N.Y. Dec. 9, 2021), amended, 2022 WL
    3030602 (S.D.N.Y. Aug. 1, 2022) ......................................................................... 6, 7

*S.S. Silberblatt, Inc. v. E. Harlem Pilot Block--Bldg. 1 Hous. Dev. Fund Co.*, 608 F.2d 28 (2d Cir.
    1979) ................................................................................................................... 8

*Saca v. Dav-El Reservation Sys.*, 600 F. Supp. 2d 483 (E.D.N.Y. 2009) ................................... 18

*Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234 (2d Cir. 2011) .......................... 21

*Shu Lan Chen v. Gypsophila Nail & Spa Inc.*, 2015 WL 3473510, (S.D.N.Y. June 2, 2015) ..... 18

*Sicom S.P.A. v. TRS Inc.*, 168 F. Supp. 3d 698 (S.D.N.Y. 2016) ............................................... 19

*Terranova v. New York*, 144 F. App'x 143 (2d Cir. 2005) .......................................................... 20

*Timberg v. Toombs*, 2022 WL 954739 (E.D.N.Y. Mar. 30, 2022) ............................................. 14

*Torres v. Gristede's Operating Corp.*, 628 F.Supp.2d 447 (S.D.N.Y.2008) ................................ 9

*Trustees of Mosaic & Terrazzo Welfare Pension, Annuity, & Vacation Funds v. Cont'l Floors,
    Inc.*, 2013 WL 5637492 (E.D.N.Y. Oct. 15, 2013) ................................................... 20

*Yong Kui Chen v. Wai Café Inc.*, 2017 WL 3311228 (S.D.N.Y. Aug. 2, 2017) .......................... 21

**Statutes**

26 U.S.C. § 7434 ........................................................................................................ 7

28 U.S.C. § 1367 ....................................................................................................... 21

29 C.F.R. § 541.100 ................................................................................................... 10

29 C.F.R. § 541.101 ................................................................................................ 13

29 C.F.R. § 541.102 ................................................................................................ 11

29 C.F.R. § 541.300 ........................................................................................... 14, 16

29 C.F.R. § 541.301 ........................................................................................... 14, 15

29 C.F.R. § 541.302 ........................................................................................... 16, 17

29 C.F.R. § 541.600 ................................................................................................ 10

29 C.F.R. § 541.602 ................................................................................................ 10

29 C.F.R. § 541.700 ................................................................................................ 11

**Rules**

Fed. R. Civ. P.15 ..................................................................................................... 8

N.Y. Comp.Codes R. & Regs., tit. 12, § 142–3.2 ...................................................... 9

**Other Authorities**

5 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1277 (3d ed. 2004) 13

## PRELIMINARY STATEMENT

Plaintiffs Juan Collado and Jenny Sanchez submit this Memorandum of Law in opposition to the motion of defendants Adolfo Meat Market Corp. ("AMMC") and Eucebio Adolfo Martinez to dismiss Plaintiffs' Complaint pursuant to Rule 12(b)(6) of Federal Rule of Civil Procedure ("FRCP") (hereinafter referred to as "Defendants' Motion").[1]

This action was commenced by the filing of a Complaint on November 1, 2022, asserting six (6) causes of action against Defendants for overtime violations under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"); for failure to timely pay wages under the NYLL; for payroll notice and wage statement violations under the NYLL; and for fraudulent filing of information returns under 26 U.S.C. § 7434.

The facts are set forth in the Complaint (Dkt. No. 1) and need not be reiterated at length herein, except as necessary to refute Defendants' assertions.

## LEGAL STANDARD

When considering a motion to dismiss pursuant to FRCP 12(b)(6), a court must "consider the legal sufficiency of the complaint, taking its factual allegations to be true and drawing all reasonable inferences in the plaintiff's favor." *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009) (internal citations omitted). The complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That burden is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). At the motion to dismiss stage, "[t]he issue is not whether a plaintiff is likely to prevail

---

[1] Defendants' Motion is supported by extrinsic evidence, including self-serving declarations of Martinez ("Martinez Decl."), Victor V. Collado ("Victor Decl."), and Bobby Blanco ("Blanco Decl.") (collectively, the "Declarations"). Dkt. Nos. 30-31, 31-1-31-4. As discussed at length in Section III, *infra*, such extrinsic evidence is improper and cannot be considered by this Court at the motion to dismiss stage.

ultimately, but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleading that a recovery is very remote and unlikely, but that is not the test." *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998) (internal citations omitted). Instead, dismissal is appropriate only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Harris v. City of N.Y.,* 186 F.3d 243, 250 (2d Cir. 1999) (internal quotations omitted). As argued below, Plaintiffs have alleged facts sufficient to withstand a motion to dismiss.

**I.    PLAINTIFFS HAVE ADEQUATELY PLEADED THEIR CLAIMS**

**A.  Plaintiffs Adequately Plead their Claims for Unpaid Overtime Wages Pursuant to the FLSA and NYLL**

In order to state a plausible overtime claim under the FLSA, plaintiffs must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours. *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 88 (2d Cir. 2013) (quoting *Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013)); *see also*, *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 201 (2d Cir. 2013) ("[t]o  plead a plausible FLSA overtime claim, Plaintiffs must provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than 40 hours in a given week"). To satisfy this standard, plaintiffs are not required to "keep careful records and plead their hours with mathematical precision"; however, the standard requires that plaintiffs provide "complaints with sufficiently developed factual allegations." *Dejesus*, 726 F.3d at 90. The pleading standard applicable to overtime claims under the NYLL is analytically identical to its federal law counterpart under the FLSA.  *Nam v. Ichiba Inc.*, 2021 WL 878743, at *6 (E.D.N.Y. Mar. 9, 2021).

Plaintiffs adequately plead claims for unpaid overtime wages under the FLSA and NYLL. First, the Complaint clearly alleges that Plaintiffs were "non-exempt employees…entitled to overtime compensation for all hours worked in excess of 40 per week." Complaint ¶ 49. Further, both Collado and Sanchez allege they worked well-over 40 hours per week during their employment with Defendants and provide detailed work schedules, with specific start and end times for each day of work, in support of their allegations. Specifically, Collado alleges that he worked a total of approximately 78 hours per week from in or around January 2012 until in or around February 2020[2]; and 74 hours per week from in around May 2020 until on or around September 8, 2021. *Id.* at ¶¶ 22, 24-26. Similarly, Sanchez alleges that she worked a total of approximately 62.5 hours per week from in or around March 2015 until in or around July 2015; 84.5 hours per week from in or around July 2015 until in or around March 2020[3]; 41 hours per week from in or around May 2020 until in or around July 2020; and 74 hours per week from in or around August 2020 until on or around September 18, 2021. *Id.* at ¶¶ 32, 34-38.

Collado and Sanchez further allege that they were paid fixed weekly amounts during their employment with Defendants and that, despite routinely working more than 40 hours per week, Defendants denied them overtime wages at a rate one and 1.5 times their regular hourly rates of pay or the applicable minimum wage rate, whichever is greater, for the hours they worked in excess of 40 per week.[4] *Id.* at ¶¶ 29-31, 50 (Collado alleges that Defendants paid him a fixed weekly salary of $550.00 per week, which increased to $650.00 per week and then to $750.00 per week);

[2] From in or around March 2020 until in or around May 2020, AMMC was closed due to the COVID -19 pandemic. As a result, Plaintiffs did not work for Defendants during this period. Complaint ¶¶ 25, 36.
[3] *See* fn 2, *supra*.
[4] "Where an employee receives a straight weekly salary, there is a rebuttable presumption under the FLSA that the salary covers 40 hours worked." *Hernandez v. 99 Thai Playground LLC*, 2022 WL 18539303, at *5 (S.D.N.Y. Nov. 28, 2022), *report and recommendation adopted*, 2023 WL 1400626 (S.D.N.Y. Jan. 31, 2023).

*see also*, *Id.* at ¶¶ 41-43, 50 (Sanchez alleges that Defendants paid her a fixed weekly salary of $525.00 per week, which increased to $600.00 per week and then to $750.00 per week).

Such allegations, without more, have been deemed sufficient to state a claim for unpaid overtime wages pursuant to the FLSA and NYLL. *See, e.g.*, *Martinez v. Triumph Constr. Corp.*, 2022 WL 861847, at *3 (S.D.N.Y. Mar. 22, 2022) (finding that plaintiff stated a claim for unpaid overtime wages under the FLSA and NYLL where plaintiff pleaded that he worked 60-84 or more hours per week and that defendants paid him some overtime wages at his regular rate of pay and did not pay any overtime wages for approximately 15-21 overtime hours per week); *Liu v. New York Neuromodulation Med., P.L.L.C.*, 2021 WL 3406373, at *2 (S.D.N.Y. Aug. 4, 2021) (denying motion to dismiss  FLSA and NYLL overtime claims even where plaintiff "pleaded somewhat generally" the hours she worked per week and the weekly salary she earned); *Jung v. Gina Grp.*, LLC, 2020 WL 3640048, at *3 (S.D.N.Y. July 6, 2020) (finding that plaintiff adequately pleaded FLSA and NYLL overtime claims where plaintiff alleged work hours in excess of 40 per week and fixed weekly salaries, despite defendants' arguments that plaintiff must allege more facts showing that her weekly wages did not include overtime pay); *Leon v. Port Wash. Union Free Sch. Dist.*, 49 F. Supp.3d 353, 357 (E.D.N.Y. 2014) (finding plaintiff's allegations that she "regularly worked forty hours per week[,]" along with "estimates" that she worked 1.5 to 2 overtime hours per week, stated claim for FLSA overtime violations); *Di Simone v. CN Plumbing, Inc.*, 2014 WL 1281728, at *4 (E.D.N.Y. Mar. 31, 2014) (denying motion to dismiss FLSA and NYLL overtime claims where plaintiff alleged that he "typically worked over 40 hours per week" and was not appropriately compensated).

### B.  Plaintiffs Adequately Plead Their Remaining NYLL Claims

Defendants have not advanced any substantive arguments with respect to Plaintiffs' remaining claims under the NYLL for untimely payment of wages pursuant to NYLL § 191(1)(a)

and payroll notice and wage statement violations under NYLL §§ 195(1) and (3). Nevertheless, the Complaint satisfies the pleading standard for these claims.

Plaintiffs have alleged that their job duties were manual in nature and that Defendants failed to timely pay Plaintiffs all their earned wages on a weekly basis. Complaint ¶¶ 23, 33, 53, 69-73. Such allegations have been deemed sufficient to state a claim for failure to timely pay wages under NYLL § 191(1)(a). *See Lopez-Serrano v. Rockmore*, 132 F. Supp. 3d 390, 404 (E.D.N.Y. 2015) (finding no rational basis to dismiss claims under NYLL § 191(1)(a) where plaintiff pleaded that she was entitled to payment on a weekly basis and that she was not timely paid for the services she performed during the relevant period).

Plaintiffs have also adequately pleaded their claims for payroll notice violations under NYLL § 195(1). Specifically, Plaintiffs allege that Defendants failed to provide them with the requisite payroll notice at the time of their respective hires, or at any time thereafter, containing information such as Plaintiffs' rates of pay and designated payday. Complaint ¶¶ 51, 77-79. Similar allegations have been deemed sufficient to withstand a motion to dismiss. *See Farmer v. Dr. Lucia Patino, Optometrist, P.C.*, 2019 WL 110956, at *8 (E.D.N.Y. Jan. 4, 2019) (holding that allegation that defendants did not provide plaintiff with a wage notice was sufficient to state a claim under NYLL § 195(1)).

Plaintiffs have also adequately pleaded their claims for wage statement violations under NYLL § 195(3). Plaintiffs allege that Defendants failed to provide them, with each wage payment, a statement listing Plaintiffs' regular and overtime hours worked, or any other information required by NYLL §§ 195(3). Complaint ¶¶ 52, 81-83. Such allegations are sufficient to state a claim for failure to provide wage statements as required under NYLL § 195(3). *See Farmer*, 2019 WL

110956, at *8 (holding that plaintiff's claim that defendants did not provide him with paystubs was sufficient to state a claim under NYLL § 195(3)).

Based on the foregoing, Plaintiffs have sufficiently pleaded their claims for untimely payment of wages and payroll notice and wage statement violations under the NYLL.

### C.  Plaintiffs Adequately Plead their Claims Under 26 U.S.C. § 7434

Defendants also do not dispute the sufficiency of Plaintiffs' pleadings as to their claims under 26 U.S.C. § 7434 for fraudulent filing of information returns ("IRS Claims"). However, given Defendants request that this Court dismiss the IRS Claims for reasons discussed below, Plaintiffs will nonetheless address the sufficiency of their pleadings with respect to the IRS Claims.

In order to state a claim pursuant to 26 U.S.C. § 7434, a plaintiff must establish that: (1) the defendant issued an information return; (2) the information return was fraudulent; and (3) the defendant willfully issued the fraudulent information return. *Katzman v. Essex Waterfront Owners LLC*, 660 F.3d 565 (2d Cir. 2011). The term "information return" includes forms containing, among other things, the total amount of wages paid to an employee. *Rosario v. Fresh Smoothies LLC*, 2021 WL 5847633, at *6 (S.D.N.Y. Dec. 9, 2021), amended, 2022 WL 3030602 (S.D.N.Y. Aug. 1, 2022) (internal citations omitted) (for the proposition that a W-2 constitutes an "information return").

Here, Plaintiffs allege that Defendants issued W-2 forms to them and that such W-2 forms were fraudulent. *See* Complaint ¶¶ 44-45 (Plaintiffs allege that Defendants paid part of their wages by check and part of their wages in cash, but that the W-2 forms Defendants issued to Plaintiffs from tax years 2015 through 2021 only reflected the wages paid to Plaintiffs by check). Plaintiffs also allege that Defendants willfully issued and filed such fraudulent W-2 forms with the Internal Revenue Service ("IRS"). *Id.* at ¶¶ 46-48  (Plaintiffs allege that although the W-2 forms that Defendants issued to them did not reflect all wages paid to Plaintiffs, Defendants willfully filed

the W-2 forms with the IRS). As a result, Plaintiffs have sufficiently pleaded their IRS Claims against Defendants. *Rosario*, 2021 WL 5847633, at *6 (finding that allegations that plaintiff was paid partially in check and partially in cash and that the W-2 form that defendants filed with the IRS only reflected wages paid via check sufficient to plead a claim under 26 U.S.C. § 7434); *see also*, *Czerw v. Lafayette Storage & Moving Corp.*, 2018 WL 5859525, at *3 (W.D.N.Y. Nov. 9, 2018) (allegations that defendants willfully filed a 1099 form that overstated the amount paid to plaintiff were enough to plead a claim under 26 U.S.C. § 7434).

The only issue that Defendants take with the IRS Claims is based on Defendants' mistaken belief that Plaintiffs were required to file a complaint with the IRS. *See* Defendants' Memorandum of Law ("Defendants' Memo") p. 9.  26 U.S.C. § 7434(d), which Defendants' Memo accurately quotes, clearly states, "[a]ny person bringing an action under subsection (a) shall provide a copy of the complaint to the Internal Revenue Service upon the filing of such complaint with the court." Contrary to Defendants' assertions, there is no requirement that Plaintiffs file a complaint with the IRS. Rather, 26 U.S.C. § 7434(d) merely requires that Plaintiffs provide the IRS with a copy of the Complaint filed with this Court, which Plaintiffs have done. In fact, on November 9, 2022, just a few days after the commencement of this action, Plaintiffs filed an affidavit of service for a November 9, 2022 letter Plaintiffs sent to the IRS enclosing a copy of the Complaint filed in this matter. *See* Dkt. No. 12*; see also,* Declaration of Katherine Morales, **Exhibit 1**, for a true and accurate copy of the November 9, 2022 letter sent to the IRS enclosing a copy of the Complaint.

Accordingly, Plaintiffs have adequately pleaded their IRS Claims, and Defendants' sole argument in support of the dismissal of the IRS Claims is without merit.

**D. To the Extent the Court Deems Plaintiffs' Pleadings Deficient, Plaintiffs Seek Leave to Amend the Complaint**

In the event this Court finds that Plaintiffs have not sufficiently pleaded their claims, Plaintiffs respectfully request leave to file an amended complaint pursuant to FRCP 15(a)(2). It is well established that leave to amend pleadings should be freely granted when justice so requires. Fed. R. Civ. P.15(a)(2); *Forman v. Davis*, 371 U.S. 178, 181-82 (1962) (emphasizing that the liberal spirit embodied in the language of FRCP 15(a)(2) is to be followed by the court). "If the plaintiff has at least colorable grounds for relief, justice does so require unless the plaintiff is guilty of undue delay or bad faith or unless permission to amend would unduly prejudice the opposing party." *S.S. Silberblatt, Inc. v. E. Harlem Pilot Block--Bldg. 1 Hous. Dev. Fund Co.*, 608 F.2d 28, 42 (2d Cir. 1979) (citing *Forman*, 371 U.S. at 182). Here, Plaintiffs have not engaged in dilatory tactics nor have they demonstrated bad faith. In fact, Plaintiffs only seek leave to amend in the event this Court deems their pleadings deficient, and such a request has been made by Plaintiffs at the very early stages of this case. Moreover, there is no indication that Defendants will suffer prejudice if there is a need to amend the Complaint, as this litigation is still in its very early stages, Defendants have not yet served an Answer, and the parties have not yet commenced discovery.

As a result, Plaintiffs respectfully request leave to amend the Complaint should the Court deem Plaintiffs' pleadings deficient.

**II. DEFENDANTS ASSERT EXEMPTIONS NOT APPARENT FROM THE FACE OF THE COMPLAINT**

Defendants contend that Plaintiffs are exempt from the overtime requirements of the FLSA and NYLL pursuant to the exemptions for (1) executive employees, (2) business owners, (3) learned professionals, and (4) creative professionals. *See* Defendants' Memo p. 6-9.

As an initial matter, the employer bears the burden of establishing exemptions from the FLSA's requirements. *Chen v. Major League Baseball Props., Inc.*, 798 F.3d 72, 81-82 (2d Cir.

8

2015). This burden is a heavy one and the FLSA exemptions "are to be narrowly construed against the employers seeking to assert them..." *Davis v. J.P. Morgan Chase & Co.,* 587 F.3d 529, 531 (2d Cir. 2009). Federal courts apply the same standards to interpreting the exemptions under the NYLL as they do to the exemptions under the FLSA. *See, e.g., Reiseck v. Universal Commc'ns of Miami, Inc.*, 591 F.3d 101, 105 (2d Cir.2010) ("The NYLL, too, mandates overtime pay and applies the same exemptions as the FLSA.") (quoting N.Y. Comp.Codes R. & Regs., tit. 12, § 142–3.2); *Torres v. Gristede's Operating Corp.*, 628 F.Supp.2d 447, 456 (S.D.N.Y.2008) ("New York's overtime provisions expressly incorporate the FLSA exemptions.").

"The application of an exemption to the FLSA is an affirmative defense, which may be raised in a pre-answer Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Chen*, 798 F.3d 72 at 81. Defendants who raise such a defense at the motion to dismiss stage may use only the allegations in the Complaint to prove the exemption. *Coker v. Goldberg & Assocs. P.C.*, 2022 WL 874719, at *2 (S.D.N.Y. Mar. 24, 2022). Further, "the 'applicability of an FLSA exemption—a necessarily fact-bound inquiry—often will not be ascertainable on the basis of the complaint alone.'" *Chen*, 798 F.3d at 83.

As further discussed below, the applicability of the executive, business owner, learned professional, and creative professional exemptions are not ascertainable from the face of the Complaint.[5]

### A. The Executive Exemption

The executive exemption only applies to employees: (1) who were compensated on a "salary basis" of at least  $455.00 per week prior to January 1, 2020 and at least $684.00 per week

---

[5] Defendants' Memo mentions the learned professional and creative professional exemptions, but does not engage in any substantive argument regarding their applicability to Plaintiffs. *See* Defendants' Memo p. 6-9. Nevertheless, out of an abundance of caution, Plaintiffs address the inapplicability of these exemptions to them.

thereafter (the "Salary Basis Test"); (2) whose primary duty is management of the enterprise in which the employees were employed or of a customarily recognized department or subdivision thereof; (3) who customarily and regularly direct the work of at least two employees; and (4) who have the authority to hire or fire employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight. *See* 29 C.F.R. § 541.100(a). Based on the allegations in the Complaint, the executive exemption is not applicable to Plaintiffs.

With respect to the Salary Basis Test: Defendants contend that the applicable minimum salary during Plaintiffs' employment with Defendants was $455.00 per week. Defendants' Memo p. 7, n.5. Defendants are incorrect. Plaintiffs were both employed with Defendants until September 2021 (Complaint ¶¶ 22, 32), and the minimum salary for exempt employees was raised to $684.00 per week, effective January 1, 2020. 29 C.F.R. § 541.100(a); *see also*, 29 C.F.R. § 541.600 (a). While the Complaint alleges that Collado earned above these minimum salary amounts (Complaint ¶¶ 29-31), the same cannot be said for the entirety of Sanchez's employment with Defendants. Specifically, as of January 1, 2020, Defendants were required to pay exempt employees at least $684.00 per week; however, Defendants paid Sanchez $600.00 per week until in or around March 2020. *Id.* at ¶ 42.

Moreover, "[a]n employee is not paid on a salary basis if deductions from the employee's predetermined compensation are made for absences occasioned by the employer or by the operating requirements of the business. If the employee is ready, willing and able to work, deductions may not be made for time when work is not available." 29 C.F.R. § 541.602. Defendants are unable to establish from the allegations in the Complaint that such deductions were

not made from Plaintiffs' weekly wages. As a result, Defendants are unable to show that Plaintiffs meet the Salary Basis Test at this stage of the case.

With respect to the second prong of the executive exemption: Defendants are unable to show that Plaintiffs' "primary duty" was the "management" of AMMC. The Complaint alleges that Collado's job duties were "cleaning, cutting, weighing, and labeling meats, maintaining supplies, opening and closing the business, and assisting customers" (Complaint ¶ 23); and that Sanchez's job duties were "operating cash registers, providing customer service, reviewing, organizing, and ordering inventory, paying vendors, and applying for licensing permits required by the Department of Agriculture." Complaint ¶ 33. The Complaint makes no other allegations regarding the job duties Plaintiffs performed during their employment with Defendants.

"Management" duties include a range of activities, such as "interviewing, selecting, and training employees... directing the work of employees; ... planning the work; ... [and] apportioning the work among the employees." 29 C.F.R. § 541.102. However, the job duties Plaintiffs allege in their Complaint do not fall anywhere within that range of activities.

Further, an employee's "primary duty" is the "principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). The "primary duty" must be assessed based on all of the facts "with the major emphasis on the character of the employee's job as a whole." *Id.* Relevant factors include, "the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee." *Id.* Employees who spend "more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement." *Id.* at § 541.700(b). As Plaintiffs do not allege a

breakdown of the time they spent performing their asserted job duties, the Complaint does not contain sufficient facts to allow the Court to ascertain Plaintiffs' "primary duty." *See, e.g., Gomez v. Dynaserv Indus., Inc.*, 2016 WL 6072371, at *2 (E.D.N.Y. Oct. 17, 2016) (declining to dismiss the complaint based on the executive exemption because, notwithstanding the complaint's use of certain terms relevant to the exemption, there was no indication as to whether the requirements of the exemption had been met, and discovery was required to determine applicability of exemption).

Defendants' suggestion that some of Sanchez's job duties, namely reviewing, organizing, and ordering inventory; paying vendors; and applying for licensing permits, are indicative of her exempt status is unavailing. Even if these job duties are deemed to be exempt work, Sanchez has not alleged the amount of time she spent performing these alleged exempt duties. As a result, the Complaint does not contain sufficient information to allow the Court to analyze, for example, the amount of time Sanchez spent performing exempt versus non-exempt work, the importance of the exempt work as compared with Sanchez's other duties, or the percent of time Sanchez spent performing exempt work.

Defendants' argument that Collado was an exempt employee because his December 17, 2021 demand letter described his job title as "manager" is similarly futile. Even if Defendants are able to establish that Collado was employed as a "manager," not a "butcher" as alleged in the Complaint, "[a] job title alone is insufficient to establish the exempt status of an employee." *Ozawa v. Orsini Design Assocs., Inc.*, 2015 WL 1055902, at *3 (S.D.N.Y. Mar. 11, 2015). Rather, "[t]he exempt or nonexempt status of any particular employee must be determined on the basis of whether the employee's salary and duties meet the requirements of the regulations...." *Id.* Regardless of Collado's job title, the job duties Collado alleged in the Complaint are clearly insufficient to establish that his "primary duty" was the management of AMMC.

12

With respect to the third and fourth prongs of the executive exemption: the Complaint makes no mention of Plaintiffs' ability to "customarily and regularly direct the work" of at least two employees. Nor does the Complaint allege that Plaintiffs had the ability to hire and fire employees. Defendants rely on improper extrinsic evidence, including self-serving declarations, to argue otherwise; however, the Court may not dismiss the Complaint simply because Defendants disagree with Plaintiffs' factual allegations. Indeed, at this stage of the proceedings, the Court must accept the truth of the allegations in the Complaint and confine its consideration to facts stated on the face of the Complaint. *Jones v. E. Brooklyn Sec. Servs. Corp.*, 2012 WL 3235784, at *5 (E.D.N.Y. Aug. 7, 2012) (denying motion to dismiss "Security Director's" FLSA claims and disregarding defendants' competing allegations that the "Security Director" supervised, hired, and fired employees); 5 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1277 (3d ed. 2004) ("[W]hen it is necessary to go outside the pleadings to establish or defend against a motion raising an affirmative defense, it can be done on a motion for summary judgment on the basis of a more fully developed record.").

Accordingly, Defendants are unable to show that the executive exemption is applicable to Plaintiffs based on the allegation in the Complaint.

**B. The Business Owner Exemption**

The business owner exemption applies to "any employee who owns at least a bona fide [twenty]-percent equity interest in the enterprise in which the employee is employed ... and who is actively engaged in its management." *Paschalidis v. Airline Rest. Corp.*, 2021 WL 5013734, at *2 (E.D.N.Y. Oct. 28, 2021) (quoting 29 C.F.R. § 541.101). Based on the allegations in the Complaint, the business owner exemption does not apply Collado.[6]

---

[6] Defendants do not contend that Sanchez is an owner of AMMC. Defendants' Memo p. 8.

13

Defendants rely on the Martinez Decl. and the Victor Decl. to argue that Collado was exempt from overtime wages as an alleged 10% owner of AMMC. Defendants' Memo p. 7-8; Martinez Decl. ¶ 5; Victor Decl. ¶ 5. Even if the Court were able to properly consider these declarations at this stage of the proceedings, Collado's alleged equity interest in AMMC is less than the 20% interest required under the business owner exemption. Moreover, as discussed in Section II.A, *supra*, the job duties Collado alleges in the Complaint do not encompass managerial duties, nor does the Complaint allege that Collado had authority over other employees. *Paschalidis*, 2021 WL 5013734, at *3 (declining to dismiss the complaint based on the business owner exemption where plaintiff had a 25% equity interest in the business, but his asserted job duties did not meet the definition of "management" under 29 C.F.R. § 541.102); *Timberg v. Toombs*, 2022 WL 954739, at *5 (E.D.N.Y. Mar. 30, 2022) ("the business owner exemption does not apply to Plaintiff. While Plaintiff owns equity interest in Meridian Prime, his interest is less than twenty percent, his job responsibilities do not encompass managerial duties, and he had no authority over other employees").

Accordingly, Defendants are unable to establish that the business owner exemption is applicable to Collado.

### C. The Learned Professional Exemption

In addition to the Salary Basis Test, which is discussed in Section II.A, s*upra*, the learned professional exemption requires that the employee's primary duty be the performance of work "requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction." 29 C.F.R. § 541.300(a).

First, the "advanced knowledge" required by the learned professional exemption cannot be attained at the high school level. 29 C.F.R. § 541.301(b). As Plaintiffs' Complaint does not allege

Plaintiffs' respective education level, Defendants are unable to establish that Plaintiffs were educated beyond high school and that they thus obtained the requisite "advanced knowledge."

Moreover, Collado alleges that his job duties included "cleaning, cutting, weighing, and labeling meats, maintaining supplies, opening and closing the business, and assisting customers. Complaint ¶¶ 22-23. Sanchez alleges her job duties included "operating cash registers, providing customer service, reviewing, organizing, and ordering inventory, paying vendors, and applying for licensing permits required by the Department of Agriculture." *Id* at ¶¶ 32-33. Such duties do not fit the definition of "work requiring advance knowledge." *See* 29 C.F.R. § 541.301(b) (defining "work requiring advanced knowledge" as work which is "predominantly intellectual in character, and which includes work requiring the consistent exercise of discretion and judgment…"). On the contrary, Plaintiffs' asserted job duties are more in line with "routine mental, manual, mechanical or physical work...," which is excluded from the learned professional exemption. *Id.*

Finally, "[t]he phrase 'field of science or learning' includes the traditional professions of law, medicine, theology, accounting, actuarial computation, engineering, architecture, teaching, various types of physical, chemical and biological sciences, pharmacy and other similar occupations that have a recognized professional status as distinguished from the mechanical arts or skilled trades where in some instances the knowledge is of a fairly advanced type, but is not in a field of science or learning." 29 C.F.R. § 541.301(c). Collado and Sanchez allege they were employed by Defendants as a butcher and cashier/assistant, respectively. Complaint ¶¶ 22, 32. Such occupations are not similar to the type of recognized professional occupations covered by the learned professional exemption. *See* 29 C.F.R. §§ 541.301(e) (1)- (6), (8)-(9) (expressly but not exclusively stating that professionals such as medical technologists, registered nurses,

physician assistants, certified public accountants, executive chefs, athletic trainers, and funeral directors generally meet the duties requirement of the learned professional exemption).

Accordingly, Defendants are unable to establish that the learned professional exemption is applicable to Plaintiffs.

**D. The Creative Professional Exemption**

In addition to the Salary Basis Test, which is discussed in Section II.A, s*upra*, the creative professional exemption requires that the employee's primary duty be the performance of work "requiring invention, imagination, originality or talent in a recognized field of artistic or creative endeavor." 29 C.F.R. §§ 541.300(a).

To start, the requirement of "invention, imagination, originality or talent" is generally met by those employed in positions such as "actors, musicians, composers, conductors, and soloists; painters who at most are given the subject matter of their painting…" 29 C.F.R. § 541.302(c). Collado and Sanchez, however, allege they were employed by Defendants as a butcher and cashier/assistant, respectively. Complaint ¶¶ 22, 32.

The job duties described by Collado and Sanchez (*Id.* ¶¶ 22-23; 32-33) do not require "invention, imagination, originality or talent," and Defendants' Memo does not argue otherwise. Based on the allegations in the Complaint, Plaintiffs' job duties clearly encompass the type of "routine mental, manual, mechanical or physical work," which is expressly excluded by the creative professional exemption. 29 C.F.R. § 541.302(a). Indeed, the creative professional exemption clearly states that the "exemption does not apply to work which can be produced by a person with general manual or intellectual ability and training." *Id.*

Finally, "a recognized field of artistic or creative endeavor" includes fields such as "music, writing, acting, and the graphic arts." 29 C.F.R. § 541.302(b). Defendants are unable to establish that Plaintiffs were employed in any such field based on the allegations in the Complaint.

Accordingly, Defendants are unable to establish that the creative professional exemption is applicable to Plaintiffs.

## III.   THE COURT SHOULD DISREGARD DEFENDANTS' EXTRINSIC EVIDENCE

### A.   Extrinsic Evidence Cannot Be Considered on a Motion under FRCP 12(b)(6)

Defendants' Motion relies heavily on the Martinez Decl., which includes exhibits A through D, the Victor Decl., and the Blanco Decl. *See* Dkt. Nos. 30-31, 31-1-31-4. Contrary to Defendants' assertions, their conclusory and self-serving declarations should be given no weight when deciding the merits of a motion to dismiss pursuant to FRCP 12(b)(6).

"In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Israel Discount Bank of N.Y.,* 199 F.3d 99, 107 (2d Cir.1999) (quotation marks omitted). Indeed, the Second Circuit has established that a district court commits reversible error when it considers affidavits or exhibits submitted by defendants in deciding a Rule 12(b)(6) motion. *See Friedl v. City of N.Y.*, 210 F.3d 79, 83–84 (2d Cir. 2000) (vacating district court's dismissal where the court clearly relied on defendant's declaration); *Kopec v. Coughlin,* 922 F.2d 152, 155 (2d Cir. 1991) (vacating district court's dismissal based on a defendant's affidavit, and refusing to interpret FRCP 12(b) as "vesting in the district court the authority to consider matters outside the pleadings and summarily to designate them "uncontroverted"). The Court may only rely on extrinsic evidence when evaluating a motion to dismiss where the evidence is "(1) attached to the complaint; (2)

incorporated into the complaint by reference; or (3) integral to the complaint." *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010).

Here, the Declarations fail to satisfy these requirements. First, the Declarations were not attached to Plaintiffs' Complaint. Second, the Declarations were not referenced in any way in the Complaint. *See Helprin v. Harcourt, Inc.*, 277 F.Supp.2d 327, 330–31 (S.D.N.Y. 2003) (holding that a document is incorporated by reference where the complaint makes "a clear, definite and substantial reference to the documents."). Finally, the Declarations are not integral to the Complaint, as a document is only found to be integral "where the complaint relies heavily upon its terms and effect[,]" such as the operative contract in an action for breach of contract. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir 2002) (internal quotations omitted).

Moreover, where there is a dispute regarding the authenticity, accuracy, or relevance of the document, the Court must disregard the document upon a motion to dismiss. *See Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006). Here, Plaintiffs vigorously dispute virtually every word of the Declarations, and such dispute goes to the very heart of the facts of this action. The Court should therefore disregard the Declarations in deciding the herein motion to dismiss. *Friedl*, 210 F.3d at 83–84 (vacating and remanding the district court's dismissal of plaintiff's complaint and holding that "a district court errs when it 'consider[s] affidavits and exhibits submitted by' defendants, … or relies on factual allegations contained in legal briefs or memoranda … in ruling on a 12(b)(6) motion to dismiss); *Shu Lan Chen v. Gypsophila Nail & Spa Inc.*, 2015 WL 3473510, at *2 (S.D.N.Y. June 2, 2015) (disregarding defendant's affidavit in support of their motion to dismiss because such affidavits are "inappropriate at this stage"); *Saca v. Dav-El Reservation Sys.*, 600 F. Supp. 2d 483, 487 (E.D.N.Y. 2009) (declining to entertain a pre-discovery motion to dismiss that relied on extrinsic evidence); *Johnson v. Levy*, 812 F. Supp. 2d 167, 176 (E.D.N.Y.

2011) (finding "no basis" to consider defendants' affidavits that were attached to a motion to dismiss "solely for the purpose of refuting the facts alleged in the complaint").

Finally, where a party relies on an English-language declaration of a person whose native language is not English, that party must "also submit documents sufficient to establish that [the declarant] understood what he was signing." *Sicom S.P.A. v. TRS Inc.*, 168 F. Supp. 3d 698, 709 (S.D.N.Y. 2016). This requirement can be met by submitting (1) a certified translation of the declaration in the declarant's native language, so long as the declarant read the translation before he signed the English-language version; (2) a signed declaration in the declarant's native language if the native language declaration is accompanied by a certified English-language translation; or (3) a separate declaration indicating that the original declaration has been translated, as long as it is clear that the declarant understood the contents of the declaration he signed. *Heredia v. Americare, Inc.*, 2020 WL 3961618, at *4 (S.D.N.Y. July 13, 2020) (internal citations omitted). "Absent one of [these] means of assurance that the declarant understood what he or she was signing, courts may strike the declaration." *Id.* In the instant matter, it is clear from the Victor Decl. itself that Victor's native language is Spanish, not English. *See* Victor Decl. ¶ 32 (stating "[t]his document has been translated for me from English to Spanish and it is an accurate translation of all the things I know regarding this case."). However, Defendants merely submitted an English-language version of the Victor Decl. and failed to submit any documents sufficient to show that Victor understood the contents of the Victor Decl. before he signed it. As a result, this is an additional basis for the Court to decline to consider the Victor Decl. in deciding the instant motion.

## B. The Court Should Not Convert This Motion to One for Summary Judgment

Where a party submits extrinsic evidence for consideration on a motion to dismiss, the court must either exclude the documents from consideration, as discussed above, or convert the

motion to one for summary judgment. *See Chambers*, 282 F.3d at 154. To properly make such a conversion, the court must "give the parties an opportunity to conduct appropriate discovery and submit the additional supporting material contemplated by Rule 56." *Id.* Where, as here, Plaintiffs have not had the benefit of discovery and therefore no opportunity to rebut the factual allegations made by Defendants, it is inappropriate to convert a Rule 12(b)(6) motion to one for summary judgment. *See, e.g.*, *Terranova v. New York*, 144 F. App'x 143, 145 (2d Cir. 2005) (vacating lower court's dismissal of plaintiff's claims, noting that the conversion requirement is "strictly enforced" and holding that "[a] district court violates this requirement when it relies on affidavits or factual allegations contained in legal briefs or memoranda" at this stage); *Trustees of Mosaic & Terrazzo Welfare Pension, Annuity, & Vacation Funds v. Cont'l Floors, Inc.*, 2013 WL 5637492, at *3 (E.D.N.Y. Oct. 15, 2013) (refusing to convert a motion to dismiss to one for summary judgment where defendants submitted affidavits purporting to deny certain allegations in the complaint and where plaintiffs had not had the benefit of discovery).

To the extent this Court decides to convert Defendants' Motion into a motion for summary judgment, Plaintiffs respectfully request that the Court allow Plaintiffs an opportunity to respond to Defendants' allegations. *Fonte v. Board of Managers of Continental Towers Condominium*, 848 F.2d 24, 25 (2d Cir.1988) ("[W]hen matters outside the pleadings are presented in response to a 12(b)(6) motion," a district court must either "exclude the additional material and decide the motion on the complaint alone" or "convert the motion to one for summary judgment under Fed.R.Civ.P. 56 and afford all parties the opportunity to present supporting material.").

## IV.   THE COURT HAS SUPPLEMENTAL JURISDICTION OVER PLAINTIFFS' NYLL CLAIMS

This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 in that this action arises under the FLSA and 26 U.S.C. § 7434. As further discussed in Section II, *supra*, Defendants'

arguments that Plaintiffs' FLSA claims require dismissal because Plaintiffs are exempt employees are meritless. Similarly, Defendants' arguments that Plaintiffs' claims under 26 U.S.C. § 7434 should be dismissed because Plaintiffs did not file a complaint with the IRS do not withstand the slightest scrutiny. *See* Section I, C, *supra.*  As a result, this Court has original jurisdiction over this matter and may exercise "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy...." 28 U.S.C. § 1367(a). Claims "form part of the same case or controversy" when they "derive from a common nucleus of operative fact." *Briarpatch Ltd. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 308 (2d Cir. 2004) (citation and internal quotation marks omitted). Claims derive from a common nucleus of operative fact when the facts underlying the claims "substantially overlap[]." *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 335 (2d Cir. 2006) (quoting *Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 704 (2d Cir. 2000)).

Plaintiffs' remaining claims under NYLL clearly derive from the same common nucleus of operative fact as Plaintiffs' FLSA and 26 U.S.C. § 7434 claims. Indeed, all claims in this action arise out of the same compensation policies and practices implemented by Defendants. Accordingly, this Court may properly exercise supplemental jurisdiction over Plaintiffs' remaining NYLL claims. *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 245 (2d Cir. 2011) ("NYLL and FLSA actions clearly derive from such a common nucleus of operative facts since they arise out of the same compensation policies and practices"); *Yong Kui Chen v. Wai Café Inc.*, 2017 WL 3311228, at *3 (S.D.N.Y. Aug. 2, 2017) ("In wage and hour cases, typically, supplemental jurisdiction is appropriate for NYLL claims during the employment relationship because those claims arise from the same underlying factual basis as FLSA claims.")

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants'

motion to dismiss in its entirety.


Dated: March 6, 2023
New York, New York

                KATZ MELINGER PLLC

By:   */s/ Katherine Morales*
        Katherine Morales, Esq.
        370 Lexington Avenue, Suite 1512
        New York, New York 10017
        (212) 460-0047
        kymorales@katzmelinger.com
        *Attorneys for Plaintiffs*