UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JUAN COLLADO and JENNY SANCHEZ, individually and on behalf of others similarly situated,

                Plaintiffs,

-against-

ADOLFO MEAT MARKET CORP. and EUCEBIO ADOLFO MARTINEZ,

                Defendants.

22-CV-9366 (JGLC)

**OPINION & ORDER**

---

JESSICA G. L. CLARKE, United States District Judge:

Before the Court is Plaintiffs Juan Collado and Jenny Sanchez's motion for default judgment against Defendant Adolfo Meat Market Corp ("AMMC"). For the reasons stated herein, the Court GRANTS in part and DENIES in part default judgment for violations of Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") and refers the matter to Magistrate Judge Willis for an inquest on damages, attorneys' fees, and costs.

## BACKGROUND

Plaintiffs commenced this action against AMMC and Eucebio Adolfo Martinez on November 1, 2022. ECF No. 1. On November 4, 2022, Defendants were served the Summons and Complaint. ECF No. 9. After the Court denied a motion to dismiss, Defendants filed an Answer to the Complaint including counterclaims for fraud, conversion, and unjust enrichment. *See* ECF No. 38. On May 4, 2023, with leave of the Court, Plaintiffs amended the Complaint to assert retaliation claims under the FLSA and NYLL. ECF No. 48 ("Compl.").

On January 10, 2024, Martinez advised that Martinez had commenced bankruptcy proceedings. ECF No. 73. The Court stayed this action as to Martinez only, while discovery continued between Plaintiffs and AMMC. ECF No. 74. On February 12, 2024, the Court granted

counsel for Defendants motion to withdraw as counsel for AMMC. ECF No. 80. The Court also reminded AMMC that a corporation may not proceed *pro se* and that if AMMC failed to retain counsel, a default judgment may be entered against it. *Id*. AMMC failed to retain counsel.

On March 25, 2024, the Clerk of Court issued a Certificate of Default for AMMC. ECF No. 89. Plaintiffs filed this motion for default judgment. ECF No. 92. On May 9, 2024, the Court issued to AMMC an Order to Show Cause regarding the default judgment. ECF No. 97. AMMC has not responded.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 55, there are two steps involved in entering judgment against a party who has failed to defend: entry of default, and the entry of default judgment. *See New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005). The first step "formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011). "The second step, entry of a default judgment, converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled, to the extent permitted by Rule 54(c)." *Id*. Rule 54(c) states, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

A defendant against whom default is entered is deemed to have admitted the well-pleaded factual allegations in the complaint establishing liability. *See* Fed. R. Civ. P. 8(b)(6); *S.E.C. v. Razmilovic*, 738 F.3d 14, 19 (2d Cir. 2013). Nonetheless, the district court "must determine whether those allegations establish a sound legal basis for liability." *Zhen Ming Chen v. Y Cafe Ave B Inc.*, No. 18-CV-4193 (JPO), 2019 WL 2324567, at *1 (S.D.N.Y. May 30, 2019).

DISCUSSION

Plaintiffs allege the following causes of action: (1) overtime violations under the FLSA; (2) overtime violations under the NYLL; (3) failure to pay timely wages under the NYLL; (4) wage notice violations under the NYLL; (5) wage-statement violations under the NYLL; (6) fraudulent filing of information returns under 26 U.S.C. § 7434; (7) retaliation under the FLSA; and (8) retaliation under the NYLL. Compl. ¶¶ 69–130.

I.  **Unpaid Overtime Claims**

To state an FLSA wage claim, a plaintiff must allege that: (1) he was the defendant's employee; (2) his work involved interstate activity; and (3) he worked for hours for which he did not receive overtime wages. *See Tackie v. Keff Enter., Inc.*, No. 14-CV-2074 (JPO), 2014 WL 4626229, at *2 (S.D.N.Y. Sept. 16, 2014). "Courts apply the same analysis for FLSA and NYLL wage and hour violations, except that the NYLL does not require plaintiffs to show a nexus with interstate commerce or a minimum amount of annual sales." *Id.* at *2 n.2 (internal citation omitted). "[T]o recover for unpaid overtime wages, the FLSA requires that plaintiffs have worked compensable overtime in a workweek longer than forty hours, and that they were not properly compensated for that overtime." *Li v. SMJ Constr. Inc.*, No. 19-CV-5309 (PGG) (JW), 2022 WL 4463225, at *4 (S.D.N.Y. Sept. 26, 2022) (internal citation omitted).

Each element is satisfied here. Plaintiffs allege that they were employees of the Defendants, who exercised sufficient control over Plaintiffs' day-to-day operations. Compl. ¶¶ 6, 8, 13. Plaintiffs also allege that Defendants operate in interstate commerce and their revenues exceed the minimum required to fall within the jurisdiction of the FLSA. *Id.* ¶ 14. Plaintiffs both sufficiently allege overtime hours and unpaid wages. Plaintiff Collado states that from January 2012 to February 2020, he was working approximately 78 hours per week. Compl. ¶¶ 22, 24. From May 2020 to September 2021, Collado was working approximately 74 hours per week. *Id.*

¶ 26. Collado states he was paid a fixed salary from January 2015 to December 2017 of $550 a week; from January 2018 to December 2019 of $650 a week; and from January 2020 to September 2021 of $750 a week. *Id.* ¶¶ 29–31. Plaintiff Sanchez states that from March 2015 to July 2015, Sanchez worked approximately 62.5 hours per week; from July 2015 to March 2020, Sanchez worked approximately 84.5 hours per week; from May 2020 to July 2020, Sanchez worked approximately 41 hours per week; from August 2020 to September 2021, Sanchez worked approximately 74 hours per week. *Id.* ¶¶ 32, 34–38. Sanchez states that from March 2015 to June 2017, Defendants paid Sanchez a fixed salary of $525 per week; from July 2017 to March 2020, $600 per week; and from April 2020 to September 2021, $750 per week. *Id.* ¶¶ 41–43. These allegations provide sufficient information about Plaintiffs' salaries and working hours to recover under the FLSA and NYLL for unpaid overtime.

## II. Untimely Wages Claims

The NYLL requires payment of earned weekly wages not later than seven calendar days after the end of the week in which the wages were earned. NYLL § 191(1)(a)(i). Plaintiffs have alleged that Defendants failed to do so. Compl. ¶¶ 85–86. AMMC is liable under the NYLL provision for timely wages.

## III. Wage Notice and Wage Statement Claims

The Wage Theft Prevention Act of the NYLL requires that employers provide each employee with annual wage notices and accurate wage statements each time wages are paid. *See* NYLL §§ 195(1)(a) and (3). An employer is required to "provide his or her employees, in writing in English and in the language identified by each employee as the primary language of such employee . . . a notice containing . . . the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other allowances." NYLL § 195(1)(a). Employers are also required to "furnish each employee with a statement with every

payment of wages, listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof . . . ; allowances, if any, claimed as part of the minimum wage; . . . and net wages." NYLL § 195(3).

However, to have standing to maintain a wage notice or wage statement claim under the NYLL, a plaintiff must allege that he suffered "downstream consequences from failing to receive that information." *Pinzon v. 467 Star Deli Inc.*, No. 22-CV-6864 (JGK) (SLC), 2023 WL 5337617, at *11 (S.D.N.Y. July 31, 2023), *report and recommendation adopted*, No. 22-CV-6864 (JGK), 2023 WL 5334757 (S.D.N.Y. Aug. 18, 2023) (internal quotation marks and citation omitted) (collecting cases). An "informational injury" is not sufficient to establish standing. *Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 307 (2d Cir. 2024). But a plaintiff may successfully establish standing by "plausibly show[ing] that defective notices led him or her to loses wages." *Id.* at 310.

Plaintiffs do not allege any downstream harm from the failure to provide wage notices and wage statements, nor any causal link between the defective notices and the loss of wages. Plaintiffs have failed to establish standing and may not recover under the NYLL wage notice and statement provisions.

### IV. Fraudulent Filing Claims

The Internal Revenue Code prohibits the willful filing of a fraudulent information return with respect to payments purported to be made to any person. 26 U.S.C. § 7434(a). The term "information return" includes forms containing, among other things, the total amount of wages paid to an employee. See 26 U.S.C. §§ 7434(f), 6724(d)(1)(A)(vii), 6501(d). An IRS W-2 form is an information return as defined by 26 U.S.C. § 6724(d)(1). *See, e.g.*, *Grande v. 48 Rockefeller Corp.*, 21-CV-1593 (PGG) (JLC), 2023 WL 5162418, at *11 (S.D.N.Y. Aug. 11, 2023).

"[S]ection 7434(a) creates a private cause of action only where an information return is fraudulent with respect to the amount purportedly paid to the plaintiff." *Pacheco v. Chickpea at 14th St. Inc.*, No. 18-CV-6907 (JMF) (GWG), 2019 WL 2292641, at *2 (S.D.N.Y. May 30, 2019) (citation omitted), *adopted by* 2019 WL 3749318 (Aug. 8, 2019) (internal citation and quotation marks omitted).

Plaintiffs state that Defendants were aware of their obligation to report accurate wages on the IRS W-2, and that they willfully reported fraudulent information that did not reflect the amount paid to Plaintiffs in cash. Compl. ¶¶ 103–05. Plaintiffs state that the yearly IRS W-2 form provided by Plaintiffs only reflected the wages paid to Plaintiffs by check. *Id.* ¶ 101. Plaintiffs have sufficiently established liability for a violation of 26 U.S.C. § 7434.

## V. Retaliation Claims

In order to make a prima facie case of retaliation under the FLSA and NYLL, a party must show "(1) participation in protected activity known to the defendant, like the filing of a FLSA lawsuit; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." *Mullins v. City of New York*, 626 F.3d 47, 53 (2d Cir. 2010); *Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 472 (S.D.N.Y. 2013) (applying the same standard for anti-retaliation claims brought under FLSA and NYLL). "[B]aseless claims or lawsuits designed to deter claimants from seeking legal redress constitute impermissibly adverse retaliatory actions, even though they do not arise strictly in an employment context." *Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 472 (S.D.N.Y. 2008) (collecting cases).

Plaintiffs state that the counterclaims filed by Defendants for fraud, conversion, and unjust enrichment are baseless and meritless, and that their sole purpose was to retaliate against

Plaintiffs for filing this lawsuit and to cause Plaintiffs distress and expenses. Compl. ¶¶ 110, 113, 115. Plaintiffs may recover damages for retaliation under the NYLL and FLSA.

## CONCLUSION

For the reasons stated herein, the Court GRANTS default judgment against AMMC on Plaintiffs' claims for (1) overtime violations under the FLSA; (2) overtime violations under the NYLL; (3) failure to pay timely wages under the NYLL; (4) fraudulent filing of information returns under 26 U.S.C. § 7434; (5) retaliation under the FLSA; and (6) retaliation under the NYLL. The Court DENIES default judgment against AMMC on the wage notice and wage statement claims under the NYLL and dismisses these claims for lack of standing.

The Court assumes Plaintiffs are no longer pursuing claims against Defendant Martinez in light of his submission at ECF No. 104. If that is not the case, Plaintiffs shall respond to the letter at ECF No. 104 by **March 3, 2025** indicating that they intend to pursue these claims and a basis for doing so. If the Court receives no submission by March 3rd or a submission indicating that Plaintiffs are not pursuing their claims, the Court will dismiss the claims against Martinez. The Court refers this matter to Magistrate Judge Willis for an inquest on damages, attorneys' fees, and costs.

The Clerk of Court is directed to terminate ECF No. 92.

Dated: February 24, 2025
New York, New York

SO ORDERED.

*Jessica Clarke*

JESSICA G. L. CLARKE
United States District Judge